# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN HOSPICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number: |
| v. | ) | 1:08-cv-01879-JEO |
| | ) | |
| KATHLEEN SEBELIUS,[1] | ) | |
| Secretary of Department of Health | ) | |
| and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action was initiated by the Plaintiff, American Hospice, Inc. (hereinafter "Plaintiff"), to challenge the validity of 42 C.F.R. § 418.309(b), a regulation promulgated by the Secretary of the Department of Health and Human Services (hereinafter "Defendant"). In that regulation, Defendant established a cap on the amount to which Plaintiff and other hospice care providers are entitled in reimbursement for costs of providing care to Medicare beneficiaries. In its Complaint, Plaintiff challenges the application of that regulation to its cost report for fiscal year 2006. (Doc. 1 at pg. 13 of 15).[2] Before the court is Plaintiff's Motion to Amend her Complaint to add an identical challenge to the regulation as applied to its cost report for fiscal year 2008. (Doc. 35). The motion has been extensively briefed and is now subject to the court's review. Upon consideration, the court finds that the motion is due to be granted.

---

[1] This case was originally styled *American Hospice, Inc. v. Michael O. Leavitt*, when it was filed October 9, 2008. (Doc. 1). During the pendency of this action, Kathleen Sebelius was sworn into office as the Secretary of the Department of Health and Human Services. She is automatically substituted as the party defendant pursuant to Rule 25(d), FED. R. CIV. P. The clerk has updated the court file to reflect this substitution.

[2] References herein to "Doc. ___" are to the electronic numbers assigned by the Clerk of the Court and located at the top of each pleading.

## I.        FACTUAL HISTORY AND BACKGROUND

In 1965, Congress created a federally-funded health insurance program for the elderly and disabled known as "Medicare."  *National Hospice and Palliative Care Corporation, Inc. v. Weems*, 587 F. Supp. 2d 184, 187 (D.D.C. 2008); *Charter Medical Corp. v. Bowen*, 788 F.2d 728, 730 (11th Cir. 1986).  This system was codified under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.  Charter*, 788 F.2d at 730.  Under Medicare, health care providers enter into agreements with Defendant to provide medical services to Medicare beneficiaries.  *Id.* The costs incurred in providing this care are reimbursed to the provider by the Secretary. *Anaheim Memorial Hospital v. Shalala*, 130 F.3d 845, 847 (9th Cir. 1997).  Congress has authorized the Secretary to promulgate regulations that define reimbursable costs under this system.  *National Hospice*, 587 F. Supp. 2d at 187.  The actual amount reimbursed to the provider is determined by a "fiscal intermediary," usually a private entity which acts as agent for the Secretary.  *Id.*; *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 400, 108 S. Ct. 1255, 1257, 99 L. Ed. 2d 460 (1988).  Providers submit cost reports to their fiscal intermediary, which reviews the report and issues a Notice of Program Reimbursement ("NPR") setting forth the reimbursement amount to which the provider is entitled.  *San Francisco General Hospital v. Shalala*, 2000 WL 1721082, * 1 (N.D. Cal. Oct. 2, 2000).

In the event a provider is dissatisfied with the reimbursement amount determined by the fiscal intermediary, the provider may appeal the NPR with either the intermediary, if the amount in controversy is less than $10,000, or the Provider Reimbursement Review Board ("Board") if the amount in controversy exceeds $10,000.  *Id*.  If the Board considers the appeal, its decision may then be reviewed by the Secretary.  *Id*.  If the Secretary reviews the decision, the provider

2

may then obtain judicial review of her conclusion in the appropriate district court by filing a civil action within sixty days of the Secretary's decision. *Id.* If the Secretary does not review the Board's decision, that decision becomes the final agency decision, and the provider may obtain judicial review of the same in the manner previously described. *Id*.

In 1980, Congress added a provision to the Medicare statute which allowed for expedited judicial review ("EJR") of cases where the Board determines that it lacks authority to decide a question presented in a provider's appeal. These cases often involve questions of law or regulations that are pertinent to the appeal. *Id*. To implement EJR in these cases, Congress enacted the following legislation:

> ... Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received. If a provider of services may obtain a hearing under subsection (a) of this section and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary....

42 U.S.C. § 1395oo(f)(1).

Two years later, Congress enacted Section 122 of the Tax Equity and Fiscal Responsibility Act (Pub. L. 97-248), which expanded the Medicare program to provide benefits for hospice care. *National Hospice*, 587 F. Supp. 2d at 187. Hospice care was intended to provide comfort, pain relief, and emotional and spiritual support to patients who had been

3

certified by their physicians as "terminally ill," defined by the Medicare statute as having a "medical prognosis that the individual's life expectancy is 6 months or less." 42 U.S.C. §§ 1395f(a)(7)(A) and 1395x(dd)(3)(A). Hospice care providers are reimbursed by the Secretary pursuant to § 1814(i) of the Social Security Act. 42 U.S.C. § 1395f(i). Under this section, providers are paid "an amount equal to the costs which are reasonable and related to the cost of providing hospice care or which are based on such other tests of reasonableness as the Secretary may prescribe in regulations...." *Id*. at § 1395f(i)(1)(A). Pursuant to this authority, the Secretary has promulgated regulations, including 42 C.F.R. § 418.309(b)(1), which provide for reimbursement to hospice care providers.

When hospice care became available under Medicare in the early 1980's, Congress allotted 210 days of such care to each Medicare beneficiary who elected to receive that service. Providers were also allotted a maximum billing amount in which they would be reimbursed by the Secretary for providing care to each Medicare patient. Initially, most patients had been diagnosed with cancer and received hospice care for a relatively short period of time; such patients almost never exceeded their allotted time or maximum cost of care. (*See* Doc. 1, ¶ 17).

Under 42 U.S.C. § 1395f(i)(2), Congress expressed that providers be reimbursed for hospice care generally as follows:

> (A)   The amount of payment made under this part for hospice care provided by (or under arrangements made by) a hospice program for an accounting year may not exceed the "cap amount" for the year (computed under subparagraph (B)) multiplied by the number of medicare beneficiaries in the hospice program in that year (determined under subparagraph (C)).

*******

> (C)   For purposes of subparagraph (A), the "number of medicare beneficiaries"

4

in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, <u>such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year or under a plan of care established by another hospice program.</u>

(Emphasis added).

## II.   DISCUSSION

Plaintiff maintains that, by the legislation just quoted, Congress intended reimbursement amounts to be determined by spreading the total cost of care for a Medicare patient across the years during which that care was actually furnished.  To implement this statute, Defendant promulgated 42 C.F.R. § 309.418(b)(1), a regulation by which fiscal intermediaries may more specifically calculate the actual reimbursement amounts due each provider for each fiscal year. Section 309.418(b)(1) provides, in relevant part:

The hospice cap amount is calculated using the following procedures:

(a) The cap amount is $6,500 per year and is adjusted for inflation or deflation for cap years that end after October 1, 1984, by using the percentage change in the medical care expenditure category of the Consumer Price Index (CPI) for urban consumers that is published by the Bureau of Labor Statistics. This adjustment is made using the change in the CPI from March 1984 to the fifth month of the cap year. The cap year runs from November 1 of each year until October 31 of the following year.

(b) Each hospice's cap amount is calculated by the intermediary by multiplying the adjusted cap amount determined in paragraph (a) of this section by the number of Medicare beneficiaries who elected to receive hospice care from that hospice during the cap period. For purposes of this calculation, the number of Medicare beneficiaries includes–

(1) Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed

5

> an election to receive hospice care, in accordance with § 418.24,
> from the hospice during the period beginning on September 28 (35
> days before the beginning of the cap period) and ending on
> September 27 (35 days before the end of the cap period).

In 1998, Congress expanded the eligibility requirements for Medicare beneficiaries to receive hospice care, and provided a more flexible length of stay for beneficiaries in hospice care. (*Id.* ¶ 19). The maximum cost of care for each Medicare patient was not amended to remain consistent with these changes. (*Id.*)

In its Complaint and Amended Complaint, Plaintiff alleges the following: After Congress expanded the eligibility requirements for Medicare patients to receive hospice care, the number of beneficiaries receiving hospice care began to increase, as did the average length of stay for many patients in hospice care. By 2004, the costs incurred by hospice care providers in furnishing this care to Medicare beneficiaries began to exceed the maximum reimbursement amount allotted for these providers. Plaintiff maintains that, since 2004, the number of providers which have exceeded this cap has increased.

For fiscal year 2006, Plaintiff's fiscal intermediary determined that Plaintiff had exceeded its reimbursement cap by $329,121. The Secretary had already paid Plaintiff for this amount, and now demanded that Plaintiff return it to correct her alleged "overpayment." Plaintiff appealed this finding to the PRRB, arguing that, while the fiscal intermediary had calculated the overpayment by following 42 C.F.R. § 309.418(b)(1), that regulation is invalid because it conflicted with the clear congressional mandate regarding how reimbursement amounts are to be calculated under 42 U.S.C. § 1395f(i)(2). Plaintiff points out that the Secretary, in promulgating § 309.418(b)(1), expressly intended to depart from the intent of Congress set forth in 42 U.S.C. §

1395f(i)(2).  When Defendant issued her proposed regulations enforcing § 1395f(i)(2) on August 22, 1983, she acknowledged that "[t]he statute specifies that the number of Medicare patients used in the calculation is to be adjusted to reflect the portion of care provided in a previous or subsequent reporting year or in another hospice."  48 Fed. Reg. 38146 (Aug. 22, 1983).  She explained:

> With respect to the adjustment necessary to account for situations in which a beneficiary's election overlaps two accounting periods, we are proposing to count each beneficiary only in the reporting year in which the preponderance of the hospice care would be expected to be furnished rather than attempting to perform a proportional adjustment. Although section 1814(i)(2)(C) of the Act specifies that the cap amount is to be adjusted "to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year * * * ", such an adjustment would be difficult in that the proportion of the hospice stay occurring in any given year would not be known until the patient died or exhausted his or her hospice benefits. We believe that the proposed alternative of counting the beneficiary in the reporting period where the beneficiary used most of the days of covered hospice care will achieve the intent of the statute without being burdensome....  Once a beneficiary has been included in the calculation of a hospice cap amount, he or she may not be included in the cap for that hospice again, even if the number of covered days in subsequent reporting period exceeds that of the period where the beneficiary was included.

Plaintiff maintains that the above statement constitutes an express refusal by the Secretary to follow 42 U.S.C. § 1395f(i)(2).  Plaintiff claims 42 C.F.R. § 418.309(b)(1) requires Plaintiff to pay substantial sums in reimbursement to Defendant for alleged "overpayments" which, apparently, are not otherwise required by statute.[3]  As previously stated, Plaintiff filed this action to challenge the application of the regulation to Plaintiff's cost report for fiscal year 2006.  It now moves to amend its Complaint to add identical claims pertaining to fiscal year 2008.[4]

---

[3]  It is not clear at this juncture whether Plaintiff would owe these sums to Defendant if 42 C.F.R. § 418.309(b)(1) more closely comported with 42 U.S.C. § 1395f(i)(2).

[4]  Plaintiff claims to have paid the Secretary $116,938 for alleged overpayments during fiscal year 2008. (Doc. 35, Exh. 1 (pp. 6-9 of 34)).

In opposing Plaintiff's motion, Defendant argues that Plaintiff's claim for fiscal year 2008 has not yet completed the administrative stage of the review process and, therefore, this court lacks subject matter jurisdiction to consider the same at this juncture.  According to Defendant, it would thus be futile for this court to grant Plaintiff leave to add a claim for fiscal year 2008, and the court should thus deny the motion.  Defendant maintains that the court cannot review any claim arising under Medicare until the agency reaches a final decision on the same.

Defendant is correct that this court may generally review Medicare claims only as provided by the Medicare statute.  Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

This provision is made applicable to the Medicare program via 42 U.S.C. § 1395ii, which states that the same shall apply to Medicare "to the same extent [that it is] applicable to" the Social Security Act.  *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S. Ct. 1084, 146 L. Ed. 2d 1 (1999) (district courts may not exercise federal question jurisdiction over claims arising under Medicare, except where application of § 1395ii would result in "no review at all").

Nevertheless, § 1395oo(f)(1) provides that the Board may grant expedited judicial review

> ...of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as

described in the following sentence) that it is without authority to decide the question.... [Judicial review may be obtained by a provider under these circumstances] by a civil action commenced within sixty days of the date on which notification of such determination is received.  If a provider of services may obtain a hearing under subsection (a) of this section and has filed a request for such a hearing, such provider may filed a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination).  The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to the review by the Secretary. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located (or, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title. Any appeal to the Board or action for judicial review by providers which are under common ownership or control or which have obtained a hearing under subsection (b) of this section must be brought by such providers as a group with respect to any matter involving an issue common to such providers.

Because Plaintiff's appeal before the Board is grounded in its argument that 42 C.F.R.

§ 418.309(b)(1) is invalid, the Board is without authority to grant such relief.  The Board,

therefore, granted Plaintiff's request for expedited judicial review.  *See Bethesda Hosp. Ass'n v.*

*Bowen,* 485 U.S. 399, 406, 108 S. Ct. 1255, 1259, 99 L. Ed. 2d 460 (1988) (citing 42 U.S.C.

§ 1395oo(d), which allows the Board only to "affirm, modify, or reverse a final determination of

the fiscal intermediary," and 42 U.S.C. § 1395oo(f)(1), which "recognizes that this limitation

does not allow Board decisions with regard to the validity of rules or regulations.  The subsection

provides for *judicial* review of a challenged regulation when the Board determines it is 'without

authority to decide the question.'" *Bethesda*, 485 U.S. at 407 n. 4, 108 S. Ct. at 1259 (emphasis

9

in original)).  Thus, it appears on the face of the statute that Plaintiff is entitled to judicial review

of its claim as to fiscal year 2008 as well as its claim for fiscal year 2006.

Defendant, however, offers a different interpretation of § 1395oo(f)(1).  It points

specifically to the following provision of that statute:

> If a provider of services may obtain a hearing under subsection (a) of this section
> and has filed a request for such a hearing, such provider may filed a request for a
> determination by the Board of its authority to decide the question of law or
> regulations relevant to the matters in controversy ... The Board shall render such
> determination in writing within thirty days after the Board receives the request and
> such accompanying documents and materials, and the determination shall be
> considered a final decision and not subject to the review by the Secretary.

(Emphasis added).  Defendant posits that this provision creates a two-step process when a

provider files a request for EJR.  First, the Board must consider whether it has jurisdiction over

the provider's appeal ("*If* a provider of services may obtain a hearing under subsection (a) of this

section") (emphasis added)).  Only if the Board determines that it has jurisdiction may it *then*

consider whether it has authority to decide the question of law or regulation presented.

According to Defendant, the Secretary is prohibited from reviewing the second portion of the

Board's determination.  However, the statute is silent as to whether the Secretary may review the

Board's decision regarding its jurisdiction over the appeal.  By this silence, Defendant appears to

argue that the statute implicitly allows the Secretary to review the jurisdictional component of an

EJR request, at her discretion.

Plaintiff disagrees, and argues that the Board's consideration of an EJR request is a single

determination that may not be reviewed on any level by the Secretary.  Hence, Plaintiff argues,

once the Board grants an EJR request, district courts are vested with subject matter jurisdiction to

hear the provider's claim.

Both parties cite to a plethora of cases in which courts have diverged on this issue.  None of them, however, is directly on point with this action, nor is any binding authority on this court. Because the question presented here appears to be one of first impression in this circuit and in most others, the court will address the cases offered by each party to determine whether any provides helpful guidance.

Of the twenty cases cited by Defendant, only four offer substantive support for its position here.  Defendant cites to *Anaheim Memorial Hosp. v. Shalala*, 130 F.3d 845 (9th Cir. 1997), for the proposition that the Secretary may reverse the Board's jurisdictional finding when considering an EJR request, and that such decision by the Secretary substitutes that of the Board as the final agency decision.

As stated, *Anaheim* is neither binding precedent in this circuit, nor is it directly on point with this case.  There, the Secretary reopened a hospital's closed cost report for the limited purpose of reclassifying malpractice insurance costs as "administrative and general costs."  Once the cost report had been reopened for that single purpose, the hospital asked the Board to consider an unrelated issue that was also contained in the cost report.  The Board held that it had jurisdiction over the appeal and granted the hospital's EJR request.  The district court remanded the appeal to the agency to review the Board's determination of jurisdiction.  The Board again held that it had jurisdiction.  The Secretary, however, vacated that decision and dismissed the hospital's appeal.  The hospital filed an action in district court on the issue of whether the Secretary could vacate the Board's finding of jurisdiction.  The district court affirmed the Secretary's decision, reasoning that the cost report had been reopened on only a narrow basis, and only questions relevant to that basis could be appealed to the Board.

11

None of these facts are on point with the issue presented here.  *Anaheim* does stand for the proposition that the jurisdiction component of an EJR request is "simply another Board decision subject to review by the [Secretary]."[5]  130 F.3d at 851.  However, the Ninth Circuit finds authority for this position in 1395oo(f)(1) by paraphrasing the *first* part of the statute, which specifically provides that the Secretary may review decisions of the Board.  It does not address, or even mention, the remainder of the statute, which specifically pertains to requests for EJR, and which specifically precludes the Secretary from reviewing the Board's decision.  The opinion contains no critical analysis of § 1395oo(f)(1), especially that part which prohibits the Secretary from reviewing EJR requests.  *Anaheim* is cited by 28 other cases, but none for the proposition that § 1395oo(f)(1) allows the Secretary to review the jurisdiction component of an EJR request.  *Anaheim* also does not address the legislative history behind the statute, which expresses the intent of Congress that administrative review on EJR requests be limited to the Board alone, thus preventing arbitrary screening by Secretary and lengthy, wasteful administrative process.

The court, therefore, is not persuaded to follow *Anaheim* in support of Defendant's position.  Other cases cited by Defendant are district court cases which are also not binding on the court and not on point with this case.  For example, in *Lenox Hill Hospital v. Shalala*, 131 F. Supp. 2d 136 (D.D.C. 2000), a provider challenged the Secretary's reimbursement amount for outlier payments under the Medicare Act.  The provider filed an untimely appeal of the reimbursement before the Board.  The Board granted an extension of time for the appeal, and

---

[5]  The Ninth Circuit stated specifically that the jurisdiction component of an EJR request is "simply another Board decision subject to review by the Administrator."  The terms "Administrator" and "Secretary" are used interchangeably throughout the case law relevant to this action, as the Administrator often acts as agent for the Secretary in reviewing Board decisions.  *See Anaheim*, 130 F.3d at 848.

decided that it had jurisdiction over the appeal and granted EJR.  The Secretary reversed the

Board's assessment of jurisdiction, finding that the Board lacked "good cause" to an grant the

extension.  The district court affirmed upon the reasoning that the Secretary may review the

Board's decision regarding its jurisdiction over an EJR request in her own discretion, and that no

judicially manageable standards were available for the court to consider how and when the

Secretary should exercise that discretion.

Although *Lenox Hill* does generally support Defendant's position here, this court is not

persuaded by the reasoning of that opinion.  The court in *Lenox Hill* cites to § 1395oo(f)(1) for its

conclusion.  This court, however, finds no statement in the statute which vests the Secretary with

discretion whether to review the Board's assessment of jurisdiction over an EJR request.  Nor

does the court in *Lenox Hill* offer any explanation for why it believes the statute provides the

Secretary with that discretion, other than citations to various regulations promulgated by the

Secretary herself.  *Lenox Hill* is a district court opinion which has been cited by other district

courts on other grounds, but not for the proposition offered by Defendant here.  Given the lack of

persuasive reasoning in that case, this court declines to be the first to do so.

Defendant also cites to *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 108 S. Ct. 1255,

99 L. Ed. 2d 460 (1988).  Defendant argues that *Bethesda* stands for the proposition that the

Board may act upon an appeal under the Medicare Act only once it obtains jurisdiction over a

provider's claim.  While this may be true, it is not disputed by Plaintiff.  *Bethesda* does not

address whether the Secretary may reconsider the Board's assessment of its jurisdiction over an

EJR request.

Possibly the most relevant case cited by Defendant is *San Francisco General Hosp. v.*

13

*Shalala*, 2000 WL 1721082 (N.D. Cal. 2000).  There, a hospital challenged the reimbursement

amount it received from the Secretary, as well as the Secretary's implementation of the outlier

provision of the Medicare Act.  The Board held that it had jurisdiction over the appeal, but

lacked authority to decide the question presented and granted EJR.  The Secretary reversed the

Board's finding of jurisdiction and dismissed the hospital's appeal.  The hospital then filed an

action in district court on grounds that the Secretary lacked authority to overturn the Board's

decision regarding its jurisdiction over the appeal.

  In affirming the Secretary's position, the court noted that a provider may seek judicial

review of the Secretary's decision reversing the Board's jurisdiction determination pursuant to 42

C.F.R. § 405.1875(g).  Thus, apparently, the court was under the assumption that judicial review

was available to the provider regardless of whether the Secretary reversed the Board's decision.

Although the opinion provides a link to this regulation, it is evident that § 405.1875 ends with

subsection f.  This court is unable to find a subsection g in the regulation.  Defendant does not

argue here that such a provision exists.  Furthermore, the court in *San Francisco* cites to no

statutory authority which contains a similar provision, or any case law that stands for this

proposition.  This court also finds no other cases which to *San Francisco* for this, or any other,

proposition.  Thus, it is unclear to what extent *San Francisco* may be relied upon, and this court

declines to do so here.

  To support its motion, Plaintiff offers several recent cases decided by district courts

outside this circuit, all of which have concluded that 42 C.F.R. § 418.309(b)(1) is invalid.  While

none of these cases present with the same procedural history as that before this court, several

address the same issues presented by the parties on Plaintiff's motion to amend.

In *Lion Health Services, Inc. v. Sebelius*, Case No. 4:09-cv-493-A (N.D. Tex., Feb. 22, 2010), Defendant argued that the court lacked subject matter jurisdiction over the appeal because the provider had not yet established that the amount in controversy exceeded $10,000. In dismissing that argument, the court explained:

> the court's subject matter jurisdiction [under 42 U.S.C. § 1395oo(f)(1)] is based on a determination by the PRRB that it lacks authority to decide the question presented by plaintiff's appeal. Such determinations were rendered [by the Board] in this case. The court sees no reason why it should review the PRRB's determination of its own authority at this time.

*Id*. at 12, n. 6. The court was apparently satisfied, premised on its reading of § 1395oo(f)(1), that it may exercise subject matter jurisdiction whenever the Board decides that it lacks authority to answer a question presented to it. In reaching its decision, the court relied exclusively on the following portion of § 1395oo(f)(1):

> Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question....

*Id*. Meanwhile, the court offered little mention of the jurisdictional component of the Board's assessment.

The court in *Compassionate Care Hospice v. Sebelius*, Case No. 09-cv-28-C (W.D. Okla., July 10, 2009), reached a similar conclusion when Defendant argued that it lacked jurisdiction due to the provider's failure to exhaust its remedies before the Board. The court reasoned:

> there is no requirement or ability to exhaust a challenge to the regulation. [T]he PRRB found Plaintiff was entitled to expedited judicial review for this very reason. Further, the statute which creates the PRRB states that judicial review is

15

the proper avenue for challenging a regulation or other question of law.  *See* 42
U.S.C.A. § 1395oo(f)(1):

> Providers shall also have the right to obtain judicial review of any
> action of the fiscal intermediary which involves a question of law
> or regulations relevant to the matters in controversy whenever the
> Board determines (on its own motion or at the request of a provider
> of services as described in the following sentence) that it is without
> authority to decide the question, by a civil action commenced
> within sixty days of the date on which notification of such
> determination is received.

> *See also Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 406 (1988) ("Neither the
> fiscal intermediary nor the PRRB has the authority to declare regulations
> invalid.").

*Compassionate Care*, Slip Op. pg. 4.  The court concluded that "there can be no exhaustion

requirement for the challenge to the validity of the regulation and whether it comports with

Congressional intent."  *Id*. at 4-5.  Similarly, in *Tri-County Hospice, Inc. v Sebelius*, Case No.

08-cv-273-RAW (Mar. 8, 2010), the district court concluded that "EJR is an exception to the

doctrine of administrative remedies," citing to *Three Lower Counties Comm'ty Health Servs.,*

*Inc. v. United States Dep't of Health and Human Servs.*, 517 F. Supp. 2d 431, 435, n.4 (D.D.C.

2007).

This court is not inclined to agree with those decisions to the extent they hold that no

administrative exhaustion is necessary before district courts are vested with subject matter

jurisdiction.  *Three Lower Counties*, although cited by the court in *Tri-County Hospice*,

specifically explained:

> [i]n order to qualify for EJR ... plaintiff must still present a claim for benefits and
> receive a notice of program reimbursement with which it is dissatisfied.  Only the
> subsequent hearing before the PBBR is waivable at the discretion of the PBBR.
> *See Heckler v. Ringer*, 466 U.S. 602, 617, 104 S.Ct. 2013, 2023, 80 L.Ed.2d 622
> (1984) ("[T]he exhaustion requirement of [42 U.S.C.] § 405(g) consists of a
> nonwaivable requirement that a claim for benefits shall have been presented to the

16

Secretary, and a waivable requirement that the administrative remedies prescribed
by the Secretary be pursued fully by the claimant.") (internal quotation marks and
citation omitted).

517 F. Supp. 2d at 435 n. 4.

In this case, however, it is not a matter of whether Plaintiff may avoid the administrative

review process *altogether* before amending her Complaint to include claims for fiscal year 2008.

It is not disputed that the Board has considered those claims and determined that it lacks

authority to answer whether 42 C.F.R. § 409.318(b)(1) is a valid regulation.  The only matter in

dispute at this juncture is whether, after the Board so held, the Secretary had authority to

reconsider and vacate any part of that decision, thereby preventing Plaintiff from obtaining

judicial review.

This court finds that the Secretary does not have such authority.  Despite Defendant's

efforts to argue otherwise, the court remains unconvinced that either the express language of 42

U.S.C. § 1395oo(f)(1), the legislative history underlying that provision, or case law which is on

point with this action supports Defendant's position.  In explaining this conclusion, the court

begins with the statute itself.

42 U.S.C. § 1395oo(f)(1) has been quoted, in relevant part, repeatedly throughout this

opinion.  At the risk of repeating itself further, however, the court does so again to highlight the

most pertinent phrases which, it believes, compel the court to find that it has subject matter

jurisdiction over Plaintiff's 2008 fiscal year claims.  The statute provides:

> (f) Finality of decision; judicial review; determinations of Board authority;
> jurisdiction; venue; interest on amount in controversy
>
> (1) A decision of the Board shall be final unless the Secretary, on his own
> motion, and within 60 days after the provider of services is notified of the Board's

decision, reverses, affirms, or modifies the Board's decision. <u>Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary</u>, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. <u>Providers shall also have the right to obtain judicial review *of any action of the fiscal intermediary which involves a question of law or regulations* relevant to the matters in controversy whenever *the Board* determines (**on its own motion or at the request of a provider of services as described in the following sentence**) that it is without authority to decide the question</u>, by a civil action commenced within sixty days of the date on which notification of such determination is received. <u>*If a provider of services may obtain a hearing under subsection (a) of this section* and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination).  The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, *and the determination shall be considered a final decision and not subject to review by the Secretary*</u>. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located (or, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title. Any appeal to the Board or action for judicial review by providers which are under common ownership or control or which have obtained a hearing under subsection (b) of this section must be brought by such providers as a group with respect to any matter involving an issue common to such providers.

(Emphasis added).

In that provision, this court finds two separate avenues of relief for a provider such as Plaintiff.  If Plaintiff were challenging a determination of its fiscal intermediary, without questioning the validity of a regulation, it could file a request for a hearing before the Board to resolve the dispute.  Once the Board reaches its decision, the same is reviewable by the Secretary.

18

Upon final decision of either the Board (in cases where the Secretary does not review the same), or of the Secretary, the provider may file a civil action in the appropriate district court within sixty days of its receipt of that decision.

This process is set forth in the first portion of § 1395oo(f)(1).  It is that portion which has been cited by many of the cases relied upon by Defendant.  However, this portion contains no reference to a provider's request for expedited judicial review, because EJR was not intended to be addressed in the first part of § 1395oo(f)(1).  That process is discussed in the remainder of the statute, as explained *infra.*

If a provider such as Plaintiff challenges the validity of a regulation, two options are presented: (1) the Board may, on its own motion, consider its authority to answer the question, or (2) the provider may request that the Board do so.  If the Board has jurisdiction over the appeal, it may answer whether it has authority to resolve the issue.  When the Board reaches it conclusion, the federal district courts are thereupon vested with subject matter jurisdiction over the case.

This court finds no merit in Defendant's argument that the Secretary may review the Board's decision regarding jurisdiction, but not its decision whether it has authority to answer the question presented.  It is correct that the statute is silent as to whether the Secretary may review the Board's assessment of jurisdiction.  However, neither method by which a Board may consider a question of law (i.e., on its own motion or upon request of the provider) contains any reference to additional review by the Secretary *on any level* before a provider may file a civil action in district court.

This conclusion is further supported by the legislative history of § 1395oo(f)(1).  The relevant portion of House Report 96-1167, P.L. 96-499 regarding the Omnibus Reconciliation

19

Act of 1980 – in which the expedited judicial review provision was enacted – explains the following:

> Title VIII authorizes the Provider Reimbursement Review Board to determine, on its own motion or at the request of a provider of services, whether it has jurisdiction over an issue brought before it by the provider.  On the basis of a determination <u>by the Board</u> that it is without authority to decide the question (or if the Board fails to render such a determination within 30 days of the provider's request), the provider will be permitted to commence a civil action with respect to the matters in controversy without further administrative review.
>
> Under present law, a provider's dissatisfaction with a particular determination made by its fiscal intermediary on the basis of a regulation issued by the Secretary must first be brought to the Board, even though the Board may not have the authority to reverse or overrule the regulation.  (The Board has no authority, for example, to rule on the legality of the Secretary's regulations but it must, nonetheless, conduct a full review of the challenge.)  The effect of this process has been to delay the resolution of controversies for extended periods of time and to require providers to pursue a time-consuming and irrelevant administrative review merely to have the right to bring suit in a U.S. District Court.  Title VIII addresses this problem by giving Medicare providers the right to obtain immediate judicial review in instances where <u>the Board</u> determines that i[t] lacks jurisdiction to grant the relief sought.

(Emphasis added).

Similar to § 1395oo(f)(1), this legislative history makes no reference of any kind, express or implied, to the effect that the Secretary may add an additional layer of administrative review once the Board has ruled upon an EJR request.  Four years after Congress provided for EJR for Medicare appeals, the Supreme Court held in *Ringer*, 466 U.S. at 617, 104 S. Ct. at 2023, that providers must continue to present legal questions to the Board before filing actions in district court.  Therefore, it is clear that Congress enacted EJR to not to avoid administrative review of these appeals altogether, but to preclude any *further* administrative review once the Board has made its decision.

Defendant acknowledges that Congress provided EJR for cases where legal questions are presented to the Board.  It disputes, however, that this change in the statute had any effect on whether the Secretary may review the Board's assessment of jurisdiction over such appeals.  Thus, according to Defendant, § 1395oo(f)(1) is silent as to the jurisdiction component of the Board's decision because § 1395oo(f)(1) was not intended to address that component.

Defendant cites to *Alexandria Hosp. v. Bowen*, 631 F. Supp. 1237 (W.D. Va. 1986), decided six years after the EJR provision was enacted, to support this argument.  In that case, hospitals sought to recover the costs of malpractice insurance incurred in the course of providing care to Medicare patients.  The Board failed to reach decision on the claim within thirty days as required by 1395oo(f)(1).  Hence, the hospitals filed a civil action in district court.  The Secretary moved to dismiss the case because the hospitals' had failed to fully exhaust their administrative remedies before the Board.

The court dismissed the case for lack of subject matter jurisdiction.  It reasoned that the Board must make a two-step determination - first, it must decide whether it had jurisdiction over the appeal, then decide the merits of the claim.  The thirty days by which the Board must reach a decision on the *merits* of the claim did not begin to run until the Board determined whether it had jurisdiction.

The hospitals argued that Congress provided the Board thirty days to decide a claim because Congress intended to expedite judicial review over these claims.  According to the hospitals, this intent would be thwarted if the thirty-day time limit did not apply to both the jurisdiction and merits components of the Board's determination.  The court disagreed with this argument on grounds that jurisdiction determinations can, by themselves, require extensive fact-

21

finding and analyses.  Imposing an artificial time limit on the Board to make these determinations might lead the Board to summarily deny EJR requests, thus preventing providers with legitimate grievances from obtaining expedited judicial review.

Though this court finds the reasoning of *Alexandria Hospital* to be well-founded, that case is not on point with the facts presented here.  Nevertheless, *Alexandria Hospital* in no way stands for the proposition that the Secretary may review the Board's finding on jurisdiction under the circumstances presented here.  That court did acknowledge a two-step process when the Board is asked whether it has authority to resolve a legal question.  However, the opinion makes no mention of an additional review by the Secretary as to *either* the jurisdictional finding of the Board or its decision regarding its authority over the question presented.  Despite its lengthy discussion of the Board's jurisdiction determination on EJR requests, the court did not address whether the Secretary may also review that decision before a provider files an action in district court.

In short, this court has found no authority that persuades it to agree with Defendant on this issue.  Upon reading the plain language of § 1395oo(f)(1) and the legislative history underlying the same, this court is convinced that additional review by the Secretary – even of only the jurisdictional component of an EJR request – is exactly the type of unnecessary, time-consuming administrative process Congress intended to limit when it created the provision for expedited judicial review.  This conclusion is further buttressed by the following Introductory Remarks by Hawaii Congressman Cecil Heftel, made on the House floor on August 20, 1980:

> [U]nder current law providers may not seek judicial review of regulations
> or policies of DHHS until after the provider has gone through a long, tortuous
> process of preparing and filing cost reports; awaiting a decision by the fiscal

intermediary; and appealing that decision to the PRRB, which must declare what everybody already knows – that the PRRB has no authority under law to decide issues regarding the validity of DHHS policies and regulations.  Medicare (and thus all taxpayers) must pay a significant portion of the huge costs of conducting this needless, always fruitless litigation exercise.  Our bill would change this situation by allowing the provider to obtain immediate judicial review in such cases – namely, those in which the PRRB has no authority to decide the case.

Also, under present law the Secretary can unilaterally decide to review – and reverse – decision of the PRRB.  This "own motion review" process, predictably, has been applied by the Secretary in a manner which suggests, on its face, a large degree of arbitrariness, or unfair treatment of providers.  For example, during the period 1975-79, DHHS affirmed or declined to review 99 percent of issues the PRRB determined in favor of DHHS but only about 60 percent of decisions in favor of providers.  Once again, a proportionate share of this additional step in the appeals process is borne directly by our taxpayers, and other costs are passed on to others who must pay for health care services.  Our bill would remove this unilateral review by the Secretary, which serves to create unnecessary delays and costs for providers who may have just grievances.  Under our proposal, both the provider and the Government would be permitted to seek judicial review directly after an adverse determination by the PRRB.

126 Cong. Rec. 22218 (1980) (statement of Rep. Heftel).

## III.    CONCLUSION

Premised on the foregoing, it is clear to this court that the Secretary was not intended by Congress to add additional layers of administrative review once the Board has determined that it has jurisdiction over an appeal but lacks authority to resolve the question before it.  For the Secretary to do so is in contravention of § 1395oo(f)(1) as written and as explicated by the legislative history addressed *supra*.

The FEDERAL RULES OF CIVIL PROCEDURE provide that a party may amend its pleading upon leave of the court "when justice so requires."  FED. R. CIV. P. 15(a)(2).  Plaintiff has moved for leave to amend pursuant to this rule, and the court finds that its requirements are satisfied.  Although the court is mindful that the question presented by Plaintiff's Motion to Amend directly

implicates its subject matter jurisdiction over Plaintiff's claims for fiscal year 2008, premised on the authorities discussed *supra*, this court is satisfied that it may properly exercise jurisdiction over the same.  Accordingly, Plaintiff's Motion to Amend (doc. 35) is due to be and is hereby **GRANTED**.

       **DONE**, this 5th day of October, 2010.

**JOHN E. OTT**
United States Magistrate Judge